```
┌─────────────────────────────────┐
│ USDC SDNY                       │
│ DOCUMENT                        │
│ ELECTRONICALLY FILED            │
│ DOC #:_____       │
│ DATE FILED: _12/07/2022_        │
└─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
Emmanuel Oruche,

                                        Petitioner,                    **REPORT AND
                                                                        RECOMMENDATION**

                    -against-
                                                                       **12-CV-04072-AT-KHP**
United States of America,

                                        Respondent.
----------------------------------------------------------------X
**TO:      HON. ANALISA TORRES, UNITED STATES DISTRICT JUDGE**
**FROM:  KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

Before the Court for a Report and Recommendation is Petitioner Emmanuel Oruche's

("Petitioner") Petition for a Writ of Habeas Corpus ("Petition"), filed pursuant to 28 U.S.C.

§ 2255.  In 2008, Petitioner was convicted in federal court for his involvement in narcotics

conspiracies occurring in 2003 and 2006.  Petitioner seeks to vacate his convictions relating to

the 2003 conspiracy only.  He challenges those convictions based on claims of Sixth

Amendment Confrontation Clause violations; ineffective assistance of counsel; and

prosecutorial misconduct.  In February 2022, after having served the majority of his sentence,

Petitioner was granted compassionate release.  For the reasons stated below, I respectfully

recommend that the Petition be DENIED in its entirety.

<b><u>BACKGROUND</u></b>

**1.  Trial of Petitioner**

On June 12, 2007, a grand jury in the Southern District of New York returned a five-

count indictment against eight defendants implicated in related narcotics conspiracies.  *See*

*United States v. Oruche*, 2008 WL 612694, at *1 (S.D.N.Y. Mar. 5, 2008), *aff'd sub nom. United*

*States v. Oluigbo*, 375 F. App'x 61 (2d Cir. 2010).  The indictment alleged that Petitioner was the

1

leader of an organization that imported heroin from Turkey and Nigeria into the United States, and that Petitioner used the facilities of his Bronx store—Nicobi Healthcare—to conduct the narcotics business. *See* Superseding Indictment (hereinafter, "Indictment"), *USA v. Oruche* (No. 07-CR-0124) (S.D.N.Y. June 12, 2007), ECF No. 20. Petitioner was tried before a jury with a co-defendant, Joseph Oluigbo. The Honorable William H. Pauley III presided over the trial.

At trial, the government introduced a range of evidence in support of Petitioner's involvement in two specific conspiracies to distribute heroin – one occurring in 2003 (the "2003 Conspiracy") and one occurring in 2006 (the "2006 Conspiracy").

As to the 2003 Conspiracy, the government's evidence included testimony from ICE Special Agent Amy Turner, who investigated this conspiracy. Agent Turner testified that in December 2003, ICE agents arrested an individual named William Wagabono ("Wagabono") at Newark Airport, where he was caught attempting to enter the country with three kilograms of heroin. (ECF No. 7, Pet. Am. Mot. at 6-7 (citing Trial Transcript ("T.") at 174-81).) Agent Turner testified that she and another ICE agent interviewed Wagabono twice, and following the interviews, the agents "attempted a controlled delivery." (*Id.*) Agent Turner explained that a controlled delivery is "where the government agents attempt to deliver the drugs to the individual who was scheduled to pick them up." (*Id.*) Agent Turner then explained that in order to carry out the controlled delivery, she had Wagabono place a telephone call to a man identified in Wagabono's notebook as "Manii." The Government then played for the jury an audiotape of Wagabono's conversations with "Manii," whom Wagabono addressed as "Emmanuel." (ECF No. 14, Opp. at 9 (citing T. at 187).) This individual was Petitioner. (*Id.*) Agent Turner testified that after several calls between Wagabono and Petitioner, Agent Turner

"felt that Emmanuel was a little nervous about coming to pick up the bags from Wagabono, so we terminated the controlled delivery." (*Id.* (citing T. at 208).) Wagabono did not testify at the trial. During summation, the prosecutor reminded the jury that following the arrest of Wagabono, Wagabono "agreed to cooperate with law enforcement and he then placed a series of recorded phone calls . . . to Emmanuel Oruche." (*Id.* (citing T. at 1006).)

The government's evidence as to the 2006 Conspiracy included testimony from a co-conspirator and cooperator Rebecca Fomum-Tibah ("Fomum-Tibah"). Fomum-Tibah testified that Oruche was the leader of an organization that imported heroin from Turkey and Nigeria. (*Id*. at 576.) The government also introduced recorded phone conversations between Petitioner and his co-defendant, Oluigbo that corroborated both individuals' knowing participation in the conspiracy. (*Id*.)

### 2. Conviction, Sentencing, Appeal, and Resentencing

On June 25, 2008, following the trial, the jury convicted Petitioner on four charges: (1) conspiracy to distribute one kilogram and more of heroin in or about 2003, in violation of 21 U.S.C. §§ 41(b)(1)(A) and 846; (2) conspiracy to import one kilogram and more of heroin in or about 2003, in violation of 21 U.S.C. §§ 960(b)(1)(A) and 963; (3) conspiracy to distribute one kilogram and more of heroin in or about 2006, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846; and (4) conspiracy to import one kilogram and more of heroin in or about 2006, in violation of 21 U.S.C. §§ 960(b)(1)(A) and 963. *See United States v. Oruche*, 2009 WL 90193, at *1 (S.D.N.Y. Jan. 14, 2009).

On June 30, 2008, Petitioner and Oluigbo moved for a new trial pursuant to Federal Rules of Criminal Procedure 29 and 33. On January 14, 2009, Judge Pauley denied this motion.

He explained that "with respect to the 2003 conspiracies, a jury could reasonably conclude that Oruche knowingly participated in those conspiracies based on recorded phone conversations he had with William Wagabono, a heroin courier.  That evidence was bolstered by testimony from DEA agents who arrested Wagabono when he arrived in the United States carrying heroin."  *Id.*  As for the 2006 conspiracies, Judge Pauley found that "a jury could reasonably conclude that Oruche was a knowing member based on the testimony of his girlfriend and co-conspirator, [Fomum-Tibah], recorded phone calls with Oluigbo, and testimony and photographs regarding a meeting between Oruche and Cosme Jemy, a courier."  *Id.*

On January 27, 2009, after determining that Petitioner was a career offender, Judge Pauley sentenced him to a term of 270 months' imprisonment followed by ten years of supervised release.  *See Oluigbo*, 375 F. App'x at 63.  Petitioner filed a direct appeal of the judgment of conviction and his sentence to the Second Circuit.  On September 15, 2010, the Second Circuit affirmed the judgment of conviction, finding that "[a]n independent review of the record reveals . . . that there was ample evidence in support of Oruche's participation in both the 2003 and 2006 conspiracies."  *Oluigbo*, 375 F. App'x at 64.  However, the Second Circuit found that Petitioner was not a career offender and remanded the case for resentencing.  *Id.* at 65-66.  On June 23, 2011, Judge Pauley resentenced Petitioner to 240 months' imprisonment and ten years of supervised release.  Petitioner did not file a direct appeal from this judgment.

Petitioner asserts that after the resentencing, he instructed his counsel to appeal the resentencing outcome.  (*See* ECF No. 27 at 2.)  However, Petitioner's counsel did not appeal the resentencing, and instead informed Petitioner he would seek review from the United States

Supreme Court as to the Second Circuit's decision denying Petitioner's appeal of his conviction. (*Id.*)  Petitioner never appealed the resentencing.  Additionally, Petitioner did not timely file a petition for writ of certiorari with the Supreme Court.  (*Id.*)

### 3.  The Instant Motion

On May 21, 2012, Petitioner, acting pro se, moved under Section 2255 to vacate his convictions as to the 2003 Conspiracy.  (ECF No. 1.)  Petitioner filed a form motion ("Initial Motion") that set forth four grounds for relief: (1) Sixth Amendment violations due the admission of hearsay testimony and evidence at trial; (2) prosecutorial misconduct; (3) ineffective assistance of counsel due to failure of counsel to preserve the Sixth Amendment claims for appeal; and (4) ineffective assistance of counsel due to failure of counsel to file a timely petition for writ of certiorari in the Supreme Court.  The Initial Motion only stated Petitioner's grounds for relief in a summary fashion and did not include any supporting facts.

On June 12, 2012, Judge Pauley issued an Order to Amend.  The Order to Amend explained that the Initial Motion did not comply with Rule 2(b) of the Rules Governing § 2255 Cases, since it did not allege "any facts in support of [Petitioner's] grounds for relief."  (ECF No. 3.)  The Court granted Petitioner leave to file an amended motion by August 15, 2012.  (*Id.*) The Order warned Petitioner that the one-year limitations period for a Section 2255 motion was running and would expire in July 2012.[1]  (*Id.* at 3.)  The Order noted that if the amended motion were to be filed after the expiration of the statute of limitations, newly alleged facts

---

[1] The Order stated that the limitations period ended on July 18, 2012, but the limitations period in fact ended on July 22, 2012.

would only "relate back" to the date the original Petition was filed if the original motion gave Respondent fair notice of the newly alleged claims.  (*Id.*)

Petitioner did not file an amended motion by the August 15, 2012 deadline.  Instead, the docket was quiet for approximately eight months until, on March 28, 2013, Petitioner filed a motion for counsel pursuant to 18 U.S.C. § 3006A(g) and to proceed in forma pauperis.  (ECF No. 4.)  Then, on April 23, 2013, Petitioner filed a motion for a "60 day extension of time" (i.e. an extension to June 22, 2013) to file an amended motion due to "unforeseen circumstances." (ECF No. 5.)  Specifically, Petitioner stated that he had not received the Court's June 12, 2012 Order directing him to file an amended motion until March 25, 2013 and accordingly did not know that an amended motion was required.  (*Id.*)  Petitioner did not file an amended motion by June 22, 2013.

On July 29, 2013, Judge Pauley denied Petitioner's motion for counsel and granted Petitioner's request for an extension of time to file the amended motion, directing Petitioner to file any amended motion by September 27, 2013.  (ECF No. 6.)  Since the amended motion would be filed after the statute of limitations expired, Judge Pauley directed Petitioner to "set forth in detail why equitable tolling applies."  (*Id*.)  The Clerk of the Court mailed a copy of the Order to Petitioner at the facility where he was being held, but this mailing was returned to the Court, marked as "Refused."  No amended motion was filed by September 27, 2013.

On February 26, 2014, Petitioner filed an amended motion ("Amended Motion"), which he labeled a "Memorandum of Law."[2]  (ECF No. 7.)  The Amended Motion set forth the same

---

[2] Although Petitioner styled the Amended Motion as a "Memorandum of Law," in light of Petitioner's pro se status at the time of the filing, and in keeping with the law in this Circuit, the Court construes the filing as an Amended

four grounds raised in the Initial Motion and also set forth the relevant facts in support of

Petitioner's arguments.  Specifically, the Amended Motion argues that: (1) Petitioner's Sixth

Amendment Confrontation Clause rights were violated when the trial court permitted Agent

Turner to testify that, following an interview with Wagabono, the Agents set up a "controlled

delivery" with Petitioner, as this testimony allowed the jury to infer that Wagabono had

implicated Petitioner in the crime, and Petitioner did not have the opportunity to cross-

examine Wagabono; (2) the prosecutor engaged in misconduct by reiterating the alleged

hearsay testimony from Agent Turner during summation and by failing to fully disclose the

contents of Wagabono's notebook to Petitioner in advance of the trial; (3) Petitioner's counsel

was ineffective because he failed to protect Petitioner's right to confrontation during trial and

on appeal; and (4) Petitioner's counsel was ineffective because he failed to timely petition for a

writ of certiorari from the Supreme Court.

In light of this filing, Judge Pauley issued a scheduling order setting deadlines for

Respondent's response and Petitioner's reply.  Respondent filed its response ("Response") on

December 6, 2014, arguing that Petitioner's Amended Motion was untimely since it was filed

well after the one-year statute of limitations expired.  (ECF No. 14.)  The Response also argued

that Petitioner's confrontation clause arguments failed on the merits since he could not show

any prejudice resulting from the admission of Agent Turner's statements; that Petitioner's

prosecutorial misconduct claims failed on the merits since he could not show that the

prosecutor made improper statements during summation or withheld any material it was

---

Motion rather than a successive petition.  *See, e.g., Ching v. United States*, 298 F.3d 174, 175 (2d Cir.2002) ("We hold that a habeas petition submitted during the pendency of an initial § 2255 motion should be construed as a motion to amend the initial motion.").

required to turn over; and Petitioner's ineffective assistance of counsel claims failed on the merits since there is no constitutional right to effective assistance of counsel for an appeal to the Supreme Court.  (*Id.*)  Petitioner filed his reply ("Reply") on February 11, 2015.  The case was quiet for several years, and on August 13, 2021, the case was reassigned to the Honorable Analisa Torres.

On April 21, 2022, Bernard Alan Seidler entered his appearance as Petitioner's counsel. The following day, Petitioner's counsel submitted a "Supplemental Reply" to the Amended Motion.  (ECF No. 28.)  The Supplemental Reply raises the new argument that Petitioner's counsel was ineffective in failing to appeal his 2011 resentencing.

On May 11, 2022, Judge Torres referred this case to me for a Report and Recommendation on the habeas petition.  (ECF Nos. 29, 30.)  I directed Respondent to submit any further supplemental briefing addressing issues raised in the Supplemental Reply (ECF No. 31), and Respondent did so on June 1, 2022 (ECF No. 32).  Respondent argued that the Supplemental Reply should be construed as a new habeas petition, but that even if the Court treats it as a continuation of the 2014 habeas petition, the submission is untimely as it was not filed within the one-year statute of limitations for a habeas petition.  Respondent also argued that the argument raised in the Supplemental Reply is moot because the argument only relates to the length of Petitioner's sentence and Petitioner is no longer under Defendant's custody.

### 4. Compassionate Release of Petitioner

On July 27, 2021, Petitioner moved in the underlying criminal action for compassionate release.  Mot. for Release from Custody, *USA v. Oruche* (No. 07-CR-0124) (S.D.N.Y. July 27, 2021), ECF No. 223.  On February 1, 2022, the Court granted this motion because Petitioner's

underlying health conditions made him especially vulnerable to COVID-19, and Petitioner had already served nearly three quarters of his sentence.  Order as to Emmanuel Oruche, *USA v. Oruche* (No. 07-CR-0124) (S.D.N.Y. Feb. 1, 2022), ECF No. 229.  Petitioner was resentenced to time served and ten years of supervised release.  *Id.*  Petitioner was released from custody and is in the process of applying for Permanent Residence status in the United States.  (ECF No. 34.)

## LEGAL STANDARDS

28 U.S.C. § 2255 ("Section 2255") permits a prisoner in federal custody to challenge his conviction on the ground that it "was imposed in violation of the Constitution or laws of the United States."  Relief under Section 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  *Brama v. United States*, 2010 WL 1253644, at *2 (S.D.N.Y. Mar. 16, 2010) (quotation marks and citation omitted).

A motion under section 2255 must "specify all the grounds for relief which are available to the movant and of which he has or, by the exercise of reasonable diligence, should have knowledge and shall set forth in summary form the facts supporting each of the grounds thus specified."  *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (citing Rules Governing Section 2255 Proceedings, Rule 2(b)).  Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C § 2244(d)(1), the motion must be filed within a one-year statute of limitations.  Timely petitions may be amended "if the new claims 'relate back' to the original petition, meaning that they 'arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading.'"  *Ozsusamlar v. United States*, 2013 WL 4623648, at *3 (S.D.N.Y. Aug. 29, 2013) (quoting Fed. R. Civ. P. 15(c)(1)(B)).

Where a petitioner does not bring a claim on direct appeal, he is barred from raising the claim in a subsequent Section 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting therefrom. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

The Court must construe pro se pleadings liberally and interpret them "to raise the strongest arguments they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (citations omitted). However, a pro se litigant is not exempt "from compliance with relevant rules of procedural and substantive law." *Tragath v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

## ANALYSIS

### 1. The Petition is Untimely.

The Petition should be dismissed because it was filed five months after the Court-set deadline, and accordingly is untimely.

The timeliness of an amended habeas motion is governed by Federal Rule of Civil Procedure 15(c). *Ching*, 298 F.3d at 181. Generally, under Rule 15(c), "an amendment is timely if it 'relates back' to the original habeas motion." *Id.* (citing Fed. R. Civ. P. 15(c)(2)). However, when an amended motion is filed after court-set deadlines have passed, "Rule 15's leniency is tempered by Rule 16(b)'s requirement that schedules 'may be modified only for good cause.'" *Sidman v. Concord Arena Parking, LLC*, 2022 WL 912753, at *2 (E.D.N.Y. Mar. 29, 2022) (citing Fed. R. Civ. P. 16(b); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339-40 (2d Cir. 2000); *Gullo v. City of New York*, 540 F. App'x 45, 46 (2d Cir. 2013)). Accordingly, if the amended motion is filed after a deadline imposed by the district court in its scheduling order, the movant

must show "good cause" for the delay. *Parker*, 204 F.3d at 339. A "finding of 'good cause'

depends on the diligence of the moving party." *Id.*, at 340. The moving party's neglect,

carelessness, or oversight are insufficient to meet the "good cause" standard. *See Multi-Juice,*

*S.A. v. Snapple Beverage Corp.*, 2005 WL 1138470, at *2 (S.D.N.Y. May 12, 2005).

Here, Judge Pauley granted Petitioner leave to amend the Petition by August 15, 2012.

Petitioner did not file an amended motion by that date, claiming he had not received the Order

telling him to do so until March 25, 2013. However, after receiving the Order on March 25,

2013, Petitioner still did not file an amended motion for almost a year. He requested an

extension until June 15, 2013, but he did not file an Amended Motion by that date. The Court

then ordered Petitioner to file an amended motion by September 27, 2013, and Petitioner did

not meet that deadline either, nor did he request an extension of that deadline. Rather,

Petitioner finally filed an Amended Motion on February 26, 2014 – approximately five months

after the Court's final deadline for filing the motion. Petitioner provided no excuse for this

tardiness.[3]

Petitioner's difficulty receiving the Court's orders via the mail does not constitute good

cause for his delay because Petitioner acknowledged that by March 25, 2013, he had received

the Court's order granting him leave to file an amended motion. Even if Petitioner did not

receive the Court's order granting an extension until September 27, 2013, Petitioner does not

provide any reason for waiting until February 26, 2014 to file the motion. Because Petitioner

---

[3] As a point of clarification, an amended motion may be filed after the expiration of the statute of limitations, provided the initial motion was filed within the limitations period and the amended motion "relates back" to the initial motion. Respondent does not contest that the Amended Motion relates back to the initial motion. Therefore, the reason the Amended Motion is untimely is not because it was filed after the statute of limitations period expired, but rather because it was filed after the final Court-set deadline for the amended motion.

has provided no excuse for his delay in submitting the Amended Motion, he has not shown good cause for the late filing.  This alone is sufficient reason to dismiss the Petition.  *See, e.g. Feltzin v. Stone Equities, LLC*, 2018 WL 1115135, at *7 (E.D.N.Y. Feb. 8, 2018), *report and recommendation adopted*, 2018 WL 1114682 (E.D.N.Y. Feb. 26, 2018).

    **2.  The Supplemental Reply is a Motion to Amend That Should Be Denied.**

Petitioner filed the Supplemental Reply without leave of the Court seven years after the habeas petition was fully briefed, and he presented the filing as an addendum to his Petition. Respondent argues that the filing should be considered a new petition.  The Second Circuit addressed this issue in *Ching*, holding that "when a § 2255 motion is filed before adjudication of an initial § 2255 motion is complete, the district court should construe the second § 2255 motion as a motion to amend the pending § 2255 motion."  298 F.3d at 177.  As discussed above, motions to amend Section 2255 petitions are governed by Federal Rule of Civil Procedure 15.  *See Littlejohn v. Artuz*, 271 F.3d 360, 362 (2d Cir. 2001).  Courts should "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, the court "has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

Here, there was no formal disposition of Petitioner's Amended Motion, and accordingly, the Court may not construe the Supplemental Reply as a new petition.  Rather, the Supplemental Reply should be construed as a motion to further amend the pending § 2255 motion.  *See Wilson v. United States*, 2019 WL 3752476, at *3 (S.D.N.Y. Aug. 8, 2019), *adhered to as amended*, 2021 WL 791229 (S.D.N.Y. Mar. 1, 2021) (construing petitioner's supplemental reply

as a motion to amend).  Leave to amend should be denied for undue delay, because the

Supplemental Reply was filed over seven years after the pending habeas motion was fully

briefed, and Petitioner provides no excuse for this delay.  *See, e.g.*, *United States v. Brooks*,

2016 WL 6126902, at *4 (W.D.N.Y. Sept. 15, 2016) (denying motion to amend § 2255

application for undue delay where the motion to amend was filed almost two years after the

pending habeas motion was fully briefed, and petitioner offered no reason for such delay).

The Court does not discuss the parties' additional arguments because the above analysis

is dispositive of the issues.

## CONCLUSION

For the foregoing reasons, I respectfully recommend the Petition be dismissed in its

entirety.

Date: December 7, 2022
        New York, New York

                                        Respectfully submitted,

                                        _Katharine H. Parker_____
                                        KATHARINE H. PARKER
                                        United States Magistrate Judge

## NOTICE

**The parties shall have fourteen days from service of this Report and Recommendation
to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules
of Civil Procedure.  *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when
service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other
means consented to by the parties)).  A party may respond to another party's objections after
being served with a copy.  Fed. R. Civ. P. 72(b)(2).**

**The parties shall also have fourteen days to serve and file any response to the other
party's objections.  Any objections and any responses to such objections shall be filed with
the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable
Analisa Torres at the United States Courthouse, 500 Pearl Street, New York, New York 10007,**

and served on the other parties.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Torres. The failure to file timely objections shall result in a waiver of those objections for purposes of appeal.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).